OCMULGEE RIVER LUMBER CO. *et al. v.* APPLEBY *et al.*

1. The provisions of the Civil Code (1895), § 2545 (Civil Code (1910), § 3064), are applicable to guardians of lunatics, and confer authority on the judge of the superior court to grant an order for the sale for reinvestment, by the guardian of a lunatic, of the whole or any part of his ward's estate.

2. Service of the petition in cases of application for an order to sell for reinvestment by the guardian of a lunatic must be made upon the ward personally, when the latter is over the age of fourteen years, as in cases of application to sell for reinvestment by guardians of minors.

MARCH 4, 1911.

Injunction. Before Judge Conyers. Jeff Davis superior court. January 13, 1910.

Frank M. Appleby and Scott B. Appleby, defendants in error, filed their petition against S. R. Pearson, for injunction and other

equitable relief, alleging that they are the owners·in fee simple, with perfect title thereto, of land lots numbers 344, 304, 306, 248, 252, and the east half of land lot number 260, except 70 acres of that half; that Pearson was going upon said lots, cutting the timber therefrom, and removing the same, without any legal right to do so; that he was also proceeding to tear down and remove from said land a number of outhouses, lumber, and material; that he declared his intention to continue cutting and removing the timber and appropriating it to his own use, and to continue removing the buildings, lumber, etc.; that this conduct, amounting to a wilful and continued trespass, would result in incalulable injury and damage to petitioners; that such trespasses from time to time would give the plaintiffs a new cause of action for said wrongs from day to day as they were committed, and would thus necessitate a multiplicity of suits, unless the defendant should be enjoined. Pearson admitted cutting the timber from all the lots except lots 248, 259, and 260. He set up in his answer, that his right and authority to cut timber from all the lots except 259 and 260, and to tear down and remove any buildings or material from the same, was under and by virtue of a lease from the Ocmulgee River Lumber Company; that the title to the timber in question was in that company; that he had the right, under a contract originally made between R. E. Stubbs and the lumber company, to cut and remove timber and do the other acts complained of; that the defendant was operating under the name of Pearson-Stubbs Lumber Company, and the petitioners knew at the time they bought the lands that defendant was engaged in cutting and removing the timber and claimed the right to the same under the lumber company; that the timber lease whereby the title was placed in the lumber company had not expired; and that his right to cut the same under the contract with the lumber company was still in force. The lumber company filed an intervention, which was allowed, and an order was taken making it a party defendant. It answered the petition, setting up that it was the owner of the timber on the lots of land before enumerated, with the exceptions already stated, under a lease which had not expired; that under the lease the lumber company or its assignees would be entitled to hold the timber for sawmill purposes for a period of three years as to each lot from the date of the entry of the company upon each lot and its begin-

ning to cut the timber thereon; that under the lease it had the complete right to enter upon the said land and construct dirt roads, tramroads, and railroads for the purpose of removing the timber therefrom, and to construct temporary houses and remove the same when it should desire; and that Pearson, operating under a contract with the lumber company, had the right to do the same.

It appears from the record that the lumber company claimed title to the timber on the lots of land in controversy, with the right to enter thereon and construct tramroads and temporary buildings and shanties, under and by virtue of a lease from W. J. Maddox. T. P. Wilcox, as guardian of E. L. Pickren, had, on April 1, 1903, conveyed to Maddox all the pine timber suitable for sawmill purposes on the lots of land in controversy; it being recited in the conveyance that "the term for which the grantee is to have and hold said timber for sawmill purposes shall be three years upon each lot, reckoning as to each lot from the date of his entry thereon, and commencing to cut the timber suitable for sawmill purposes; the said grantee shall have the full and free right to enter upon said lands with dirt roads, tramroads, and railroads for the purpose of removing said timber, and may do such other and further things as are usual and incident to the taking of timber for sawmill purposes, and shall have the right to assign this lease in whole or in part." This lease or conveyance was executed in the usual form of warranty deed, properly attested to entitle the same to record, and recorded in the clerk's office of Coffee superior court on May 29, 1903. E. L. Pickren was the common source of title. At the August term, 1900, of the court of ordinary, Pickren was adjudged a lunatic, and T. P. Wilcox was appointed guardian of his person and property. Subsequently to the execution of the conveyance by T. P. Wilcox, as guardian, to W. J. Maddox, Pickren died, leaving as his sole heir Mrs. Myrtle Wilcox. It was admitted that the plaintiffs were the holders, by conveyance from Mrs. Myrtle Wilcox, of the legal title to the land on which is situated the timber involved in the case, she being the owner thereof except in so far as the same passed out of her predecessor in title, T. P. Wilcox as guardian of E. L. Pickren. T. P. Wilcox executed the conveyance above referred to, to W. J. Maddox, under and by virtue of an order passed by the judge of the superior court of Coffee county, upon application made in 1901, authorizing the

guardian to sell, for the purpose of reinvestment, the turpentine and sawmill privileges on the lots of land in controversy. The application for leave to sell was duly served upon Susan D. Wilcox, the next of kin, and upon the duly appointed guardian ad litem, and on October 26, 1901, the judge of the superior court granted leave to sell the property for reinvestment.

Upon the hearing the court granted an interlocutory injunction against both defendants, and they excepted.

*Haygood & Cutts*, for plaintiffs in error.

*C. T. Roan* and *Lankford & Dickerson*, contra.

BECK, J. (After stating the facts.) Under the case as presented in this record, the plaintiffs were not entitled to maintain their petition if the order granted upon the application of T. P. Wilcox as guardian was not invalid for want of authority upon the part of the court to grant such an order to the guardian of a lunatic, or for want of proper service of the application to sell.

1. The Civil Code (1895), § 2545 (Civil Code (1910), § 3064), provides, that, "By order, in term or vacation, of the judge of the superior court of the county of the guardian's appointment, any guardian may sell the whole or any part of the estate of their wards, for reinvestment, upon such terms and at such time and place as said judge may order." If the application under consideration in this case and the proceedings had thereupon had involved the question of sale, for reinvestment, by the guardian of a minor, no question could have arisen as to the validity of the order, in case there was no failure to serve the proper parties as required by law; and it seems that the provisions of § 2571 (Civil Code (1910), § 3090), are sufficiently broad to cover the case of an order granted upon similar proceedings to sell, for reinvestment, obtained by the guardian of a lunatic. The section last referred to provides as follows: "Guardians so appointed shall take the same oath and give a like bond with guardians of minors, and their powers, duties, and liabilities shall be the same, and be exercised under the same rules and regulations." In enacting the law in reference to the powers and duties of a guardian for a lunatic the legislature made no other provision whereby, in case the lunatic should have an estate which produced no income, the same might be converted into an estate producing an income, than by making the provision contained in the code section last quoted.

. Certainly some such power should be vested in the guardian for a lunatic, because in a large number of cases proper provision for a lunatic could not be made except by the exercise of just such a power, under the safeguards which the law has thrown around sales for reinvestment for guardians. To make the provisions of § 2545 applicable to guardians for lunatics can not be considered as giving to the provisions of § 2571 any other meaning than the terms thereof plainly import.

2. While we have held above that the provisions of § 2545 are applicable to guardians of lunatics, we think that all the safeguards and checks which are provided for the guardian who is seeking to sell the estate of his minor ward should also be held to be applicable to the guardian of a lunatic, seeking to sell, for reinvestment, the estate of a lunatic; and this includes the requirement that service upon the lunatic shall be made in the same way, the circumstances being the same, as upon a minor. That is, if the ward, a lunatic, is under the age of 14 years, service on the duly appointed guardian ad litem will be sufficient, without personal service upon the lunatic; but in case the lunatic is over 14 years of age, service should be perfected as service upon a minor ward, by serving him personally. In the present case there is nothing in the record to show whether the lunatic was over or under the age of 14 years. And inasmuch as it is the duty of the judge to investigate the facts involved in the application to sell, it should be presumed that service upon the guardian ad litem of the application to sell was sufficient, and, as the lunatic was not served personally, that he was not of such an age as to require him to be so served; and the defendants in this case, who derive title through the order to sell for reinvestment, should be given the benefit of that presumption, in the absence of proof to the contrary. If, however, at the final trial proof should show that the lunatic had attained the age of 14 years, then personal service upon the lunatic should be shown; in the absence of which the order for the sale of his estate for the purpose of reinvestment would be invalid. But so far as appears from the record the order for the sale could not be held to be invalid, either for want of jurisdiction in the court to grant it, or for a want of due service of the application for the sale; and that being true under the uncontroverted evidence in the case, the defendants, in doing the acts alleged in

the petition to constitute a trespass, were acting within their legal rights, and the injunction should not have been granted.

It is not necessary now to decide the question as to whether Mrs. Myrtle Wilcox received the full value of the timber privileges claimed by the defendants in this case and would be estopped from setting up a claim adverse to the defendants, and whether or not the plaintiffs, who derived title through her, had such notice of the facts upon which the defense of estoppel is based as would operate to estop them also from maintaining this bill in case. it should appear that the order obtained by the guardian for the lunatic for the sale of his ward's estate was invalid. That question may be left to be more fully investigated at the final hearing.

*Judgment reversed. All the Justices concur.*